SHAINIS & PELTZMAN, CHARTERED
Stephen C. Leckar (SL-9168)
1850 M St., NW, Suite 240
Washington, D.C. 20036
(202) 742-4242

LAW OFFICE OF FREDERICK R. DETTMER
Frederick R. Dettmer (FD-2426)
340 Corlies Ave.
Pelham, New York 10803
(914) 738-8782

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**INTERNATIONAL SWAPS AND DERIVATIVES**
**ASSOCIATION, INC.**

                     **Plaintiff,**

           **-against-**

**SOCRATEK, L.L.C.,**

                     **Defendant.**
- - - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - - - -

**Index No.:**
**1:09-cv-8033 (HB)**
     **ECF Case**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff International Swaps and Derivatives Association, Inc. ("ISDA") submits this

memorandum of law in support of its motion for a preliminary injunction restraining

defendant Socratek, L.L.C. from infringing ISDA's copyrighted Master Agreements

pending this suit's determination and the issuance of a permanent injunction.

**Preliminary Statement**

ISDA is a trade association. Its members deal in privately negotiated derivatives transactions.[1]

ISDA owns the copyright in the 1992 and 2002 Master Agreements. "Parties to credit derivative swaps enter into a standard form 'Master Agreement' created by …ISDA, which governs the legal and credit relationship between the parties and other aspects of the agreement."[2]

Socratek, through an interactive website, sells unauthorized reproductions of the Master Agreements – copies that even include ISDA's copyright notice. Socratek's doppelgangers are available and transmitted as interactive internet computer files, which then can be reproduced simply by clicking a "mouse."

Socratek rejected ISDA's cease and desist letters. It contends that Section 35A of the Securities and Exchange Act of 1934, as amended,[3] which authorized the SEC to create its "EDGAR" public filing system, supposedly places copyrighted documents in the public domain and divests them of copyright protection. Socratek's position misreads the statutory scheme.

The law has long recognized that placing a copyrighted document in public files does not divest copyright. Nothing in Section 35A facially or implicitly repeals these decisions or the Copyright Act. In fact the two statutes can be read together. Section 35A has two

---

[1] "The term 'derivative,' as the term is used in today's financial world, refers to a financial instrument that derives its value from the price of an underlying instrument or index." *CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 562 F. Supp. 2d 511, 519 (S.D.N.Y.), *aff'd*, 292 Fed. Appx. 133 (2nd Cir. 2008).

[2] *Aon Fin. Prods. v. Societe Generale*, 476 F.3d 90, 93 n.4 (2nd Cir. 2007).

[3] 15 U.S.C. § 78*ll.*

purposes. It prevents the contractor who administers EDGAR from charging people

monopolistic prices to access the SEC's public files. And it allows an interested person to

obtain a copy of a document that a public company happened to file in EDGAR and then

use that particular copy to gain information for, say, investment decisions or media

stories, or to give away or to sell that particular document without paying any fees to the

contractor, in the same way that a purchaser of a copyrighted book could make use of that

particular copy that it had bought.

But Section 35A does not authorize what Socratek is doing. Section 35A does not

allow vendors to pirate privately-created copyrighted documents fortuitously placed in

EDGAR and then reproduce and market those documents for commercial profit-making

purposes. To enjoin Socratek in no way frustrates Section 35A's terms and intent.

Unless Socratek is enjoined, the loss to ISDA is irreparable. Socratek's inducement of

cut-rate infringements via the internet represents no ordinary infringement because every

downloader who receives an interactive copy of one of ISDA's copyrighted works can

then transmit perfect copies of that work. Accordingly, the process is potentially

exponential rather than linear, threatening virtually unstoppable infringement of the

copyright in a way that no award of damages ever could recompense.

ISDA's reputation is threatened in an additional way. The versions being offered for

sale by Socratek replicate the Master Agreements' "Main Text," along with appended

Schedules that contain bilateral changes made by the parties to those particular

contractual relationships.[4] The ISDA copyrighted work contains the same Main Text and

a Schedule that serves as a template for memorializing bilaterally negotiated amendments

---

[4] *CSX*, 562 F. Supp. 2d at 519 n. 11 ("The ISDA master agreement is 'a standard form that . . . includes basic representations and covenants,' that parties supplement with modifications to account for their specific interests.")

and deletions to the Main Text. ISDA's Schedule neither makes nor recommends any such changes, however. The Socratek copy is potentially problematic because a purchaser may think it is getting an ISDA Master Agreement when in fact it is receiving something that may have significant modifications from the original and has not been seen or endorsed by ISDA. Socratek does not disclose that shortfall. The resulting confusion and attendant loss of reputation and goodwill cannot be recompensed fully by damages.

**Factual Background**

   *A.  ISDA and the copyrighted Master Agreements.*

   ISDA is a New York not-for-profit corporation. Its members include institutions that deal in privately negotiated derivatives, as well as businesses, governmental entities and other end users that rely on over-the-counter derivatives to manage financial market risks efficiently.[5]  ISDA owns the registered copyright in, *inter alia*: (i) the 2002 ISDA Master Agreement (Multicurrency-Cross Border); (ii) the 1992 ISDA Master Agreement (Multicurrency-Cross Border); and (iii) the 1992 ISDA Master Agreement (Single Currency – Local Jurisdiction).[6]

   The Master Agreements are used for documenting derivatives transactions. They also are used by ISDA (and other firms) for training and instructional purposes. ISDA generates in excess of $35,000 annually in direct sales of the 1992 and 2002 Master

---

   [5]  Pickel Dec., ¶¶ 2-3. Previously ISDA was named the "International Swaps Dealers Association, Inc." *Id.*, ¶ 2.

   [6]  Walsh Dec., ¶¶ 3, 5 & Exs. 2a, 4a thereto; Pickel Dec., ¶ 4. ISDA also owns the copyright in the 1987 Interest Rate and Exchange Agreement; 1994 ISDA Credit Support Annex (Security Interest - New York Law; and the 1987 ISDA Interest Rate Swap Agreement. *Id.*

Agreements. In addition, ISDA members, firms and others pay annual fees to subscribe to

ISDA's on-line library, which contains copies of the Master Agreements.[7]

> *B. Socratek's infringement of ISDA's copyright.*

Defendant, Socratek, LLC ("Socratek") is a New Jersey limited liability corporation.

Socratek operates a website (http://www.techagreements.com), which "provides Business

Professionals and Lawyers with access to the actual agreements used in over 500,000

transactions covering over 30 industries." Socratek's website exhorts its audience

"Looking for an agreement? Search for over 500,000 agreements now…."[8]  According to

a recent Internet survey, the website reaches about "22,747 U.S. monthly people."[9]

Although Socratek's website lists as the "contact" a "TechAgreements LLC," no

incorporated entity by that name has been found. "TechAgreement LLC's" address is the

Massachusetts residence of Alan R. Schwartz ("Schwartz"), a member of the New York

bar. He owns and controls Socratek and, in correspondence with counsel for ISDA,

described TechAgreements as a "d/b/a" for Socratek.[10]

About August 7, 2009, Breda Walsh, an ISDA employee located in this District,

accessed the techagreements.com interactive website. She ordered and paid $35.00 for a

Microsoft Word® document file of the 1992 ISDA Master Agreement (Single Currency –

Local Jurisdiction). The interactive Master Agreement file that Socratek then e-mailed

her in this District is a near-*verbatim* copy of the ISDA original. It includes, at page 3, the

---

[7]  Pickel Dec., ¶¶ 5-6.

[8]  Leckar Dec., Ex. 1.

[9]  http://www.quantcast.com/techagreements.com/summary  (last accessed August 23, 2009).

[10]  Leckar Dec., ¶¶ 3, 4 & Ex. 4d thereto.

inscription ""Copyright © 1992 by International Swaps Dealers Association, Inc."[11]

ISDA did not authorize Socratek to reproduce and distribute this (or any other) iteration

of the Master Agreement.[12]

Ms. Walsh followed the same process about August 24, 2009. She accessed the

techagreements.com interactive website. She ordered and paid $35.00 for a Microsoft

Word® document file of the 2002 ISDA Master Agreement (Multicurrency-Cross

Border). The interactive Master Agreement file that Socratek then e-mailed her in this

District is, again, a near-*verbatim* copy of the ISDA original.[13]

Using the term "ISDA" to run a search on Socratek's website on August 24, 2009

yielded over 1,920 "hits." An examination of the first ten of these documents shows them

each to be a copy of an ISDA-copyrighted Master Agreement.[14]

   *C.  Socratek's rejection of ISDA's cease and desist letters.*

Socratek's principal, Schwartz, has refused ISDA's three written requests to cease

and desist from reproducing and disseminating the copyrighted Master Agreements. (The

last such letter, sent on August 14th, enclosed a draft of the complaint in this action.)

Socratek and Schwartz claim that Section 35A gives them the absolute, unfettered right to

reproduce and sell the Master Agreements and that they intend to continue doing just

that.[15]

---

[11]  Walsh Dec., ¶¶ 2-3 & Exs. 1a-b, 2a thereto.

[12]  Pickel Dec., ¶ 7.

[13]  Walsh Dec., ¶¶ 4-5 & Exs. 3a-b, 4a thereto.

[14]  Walsh Dec., ¶ 7. The full array of Socratek's unauthorized wares are listed at
http://www.techagreements.com/AgreementSearch.aspx?search=normal&query=ISDA.

[15]  Leckar Dec., ¶ 4 & Ex. 4b, 4d thereto.

*D. Socratek's infringement will irreparably injure ISDA.*

Unless Socratek is enjoined from infringement, ISDA will be irreparably injured in a way that an award of damages cannot compensate.

*First*, Socratek is offering identical copies of the Main Text of ISDA's Master Agreements at prices substantially lower than the prices for legitimate copies. This puts ISDA in imminent danger of losing current and prospective purchasers, who will turn to Socratek and buy unauthorized cheap duplicates rather than legitimate copies of the Master Agreement.[16]

*Second*, ISDA is also irreparably injured in another way: Socratek is sending its customers unauthorized identical *interactive* copies of ISDA's works. The Socratek copies then can be inexpensively and quickly reproduced and distributed almost limitlessly. Unless restrained, virtually an entire universe of copyrighted content has been, and can continue to be, made available for unending infringement by Socratek's customers.[17]

*Third*, Socratek's infringement threatens to confuse consumers and irreparably injure ISDA's reputation and goodwill. Notably, ISDA Master Agreements are accompanied by a "Schedule" that serves as a template for making any substantive changes. The Master Agreements that Socratek is selling, however, also contain substantive, bilaterally negotiated amendments made by the parties to those particular transactions, which then are contained in the accompanying Schedules. (For instance the 2002 Master Agreement

---

[16] Pickel Dec., ¶ 12. Socratek offers its wares at $35.00 per file. ISDA sells the 1992 Master Agreement at $150.00 to non-members and $60.00 to members; the 2002 Master Agreement is sold to non-members for $75.00 and to members for $30.00. *Id. See also* Walsh Dec., ¶ 6.

[17] Pickel Dec., ¶ 13; Walsh Dec., ¶¶ 3, 5.

Socratek sold Ms. Walsh was negotiated between Sovereign Bank and CPI

Aerostructures and then evidently taken from EDGAR and placed in Socratek's

database.[18]) Socratek's website (reproduced as Exhibit 1 to the Leckar declaration) does

not reveal that the look-alike agreements it is marketing may lack recommended language

found in the ISDA original or may contain new provisions, pertinent only to the parties

who negotiated them. An unwary purchaser is at risk of thinking that the Schedule

contains terms that are ISDA-approved, and by extension, market-approved terms.[19]

## Argument

To obtain a preliminary injunction, ISDA must demonstrate (1) irreparable harm in

the absence of the requested relief, and (2) either (a) a likelihood of success on the merits

or (b) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly in its favor.[20] It can satisfy those

standards.

---

[18]  Walsh Dec., Ex 3b.

[19]  Pickel Dec., ¶¶ 8-11, 14 (comparing Walsh Dec., 3b to Ex. 4a).

[20] *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2nd Cir. 2009); *County of Nassau v. Leavitt*, 524 F.3d 408, 416 (2nd Cir. 2008); *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2nd Cir. 2002); *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 77-78 (2nd Cir. 1994).

### A. *Irreparable Harm.*

A *prima facie* case of copyright infringement normally gives rise to a presumption that the copyright owner will suffer irreparable harm.[21] Here, there is no dispute that Socratek has copied, almost *verbatim,* the text of ISDA's copyrighted Master Agreements. Hence ISDA presumptively has suffered irreparable harm.

In addition, the record contains specific, plausible evidence of ISDA's irreparable harm. ISDA developed creative contracts that are an important aspect of derivatives trading. ISDA has the statutory right to refuse to allow Socratek to copy its works.[22] But the unauthorized introduction into the market of virtually identical Master Agreements -- ones that include ISDA's copyright notice -- is likely to divert ISDA's sales by illegally exploiting its business and doing so at substantially reduced prices.[23]

---

[21]  *Merkos L'Inyonei*, 312 F.3d at 96 (*citing ABKCO Music, Inc. v. Stellar Records, Inc*., 96 F.3d 60, 64 (2nd Cir. 1996)); *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp*., 25 F.3d 119, 124 (2nd Cir. 1994)("Normally, when a copyright is infringed, irreparable harm is presumed; this is because the confusion created in the marketplace will damage the copyright holder in incalculable and incurable ways."); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1094 (2nd Cir. 1977)(*citing and quoting American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc.,* 389 F.2d 903, 905 (2nd Cir. 1968)); *Wainwright Sec., Inc. v. Wall St. Transcript Corp*., 558 F.2d 91, 94 (2nd Cir. 1977)(*citing Rushton v. Vitale,* 218 F.2d 434, 436 (2d Cir. 1955)(Clark, J.)); *Nature Enters. v. Pearson*, Copy. L. Rep. (CCH) ¶ 29,660, 2008 U.S. Dist. LEXIS 86142, *8 (S.D.N.Y. Oct. 24, 2008); *Dan River, Inc. v. Sanders Sale Enters.,* 97 F. Supp. 2d 426, 429 (S.D.N.Y. 2000); *Wales Industrial, Inc. v. Hasbro Bradley, Inc*., 612 F. Supp. 510, 521 (S.D.N.Y. 1985)(Weinfeld, J). *See also Lida, Inc. v. Texollini, Inc*., 768 F.Supp. 439, 443 (S.D.N.Y. 1991) ("The allegations of irreparable injury need not be very detailed if a prima facie case of copyright infringement can be shown.")(internal citations omitted).

[22] *Cherry River Music Co. v. Simitar Entertainment, Inc*., 38 F. Supp. 2d 310, 323 (S.D.N.Y. 1999).

[23]  *SeeMuze, Inc. v. Digital On-Demand, Inc.,* 123 F. Supp. 2d 118, 130 (S.D.N.Y. 2000); *Kurt S. Adler, Inc. v. World Bazaars,* 897 F. Supp. 92, 96 (S.D.N.Y. 1995); 4 David Nimmer, *Nimmer on Copyright,* § 14.06[A][2][b] at 14-136  (2009)(*citing Judscott Handprints, Ltd. v. Washington Wall Paper Co*., 377 F. Supp. 1372, 1380 (E.D.N.Y. 1974)("the large disparity in price between defendants' product and plaintiff's is a sufficient indicator of irreparable harm to plaintiff's reputation as a high quality exclusive distributor to warrant the relief requested.")). *Accord Albert E. Price, Inc. v. Metzner,* 574 F. Supp. 281, 289 (E.D. Pa. 1983)(granting relief; citing cases).

Yet that is only the beginning of the problem. Irreparable injury also flows from the

fact that ISDA's copyrights have and will be rendered "particularly vulnerable to

continuing infringement." This phenomenon is attributable to "massive, repeated, near-

instantaneous, and worldwide infringement" *via* the Internet and the ease of reproducing

the interactive documents that Socratek is copying and sending to customers.[24]

ISDA also risks substantial damage to its reputation because of the strong likelihood

of confusion by customers of Socratek who believe they are purchasing original ISDA

Master Agreements, when, in fact, they are being sold products that also contain

unexpected differences and/or omissions from the ISDA products. Such injury cannot be

fully compensated by an award of damages and is, perforce, also irreparable.[25]

### B. The Merits.

To succeed on a copyright infringement claim, a plaintiff must establish "(1)

ownership of a valid copyright, and (2) copying of constituent elements of the work that

are original."[26] The issuance of a certificate of registration is *prima facie* evidence of the

copyright's validity.[27] ISDA's registrations satisfy the first element of its claim.

---

[24] *MGM Studios, Inc. v. Grokster, Ltd.,* 518 F. Supp. 2d 1197, 1218 (C.D. Cal. 2007)(*citing Twentieth Century Fox Film Corp. v. Streeter,* 438 F. Supp. 2d 106, 1073 & n.2 (D.Az. 2006)). *Accord Capitol Records, LLC v. McEwan,* 2009 U.S. Dist. LEXIS 2073, *7 (E.D.N.C. Jan. 13, 2009).

[25] *Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1195 (2nd Cir.1971) (Friendly, J.)("Confusion may cause purchasers to refrain from buying either product and to turn to those of other competitors. . . . Furthermore, if an infringer's product is of poor quality, . . . a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market.") ; *Saban Entertainment v. 222 World Corp.,* 865 F. Supp. 2d 1047, 1056-57 (S.D.N.Y. 1994)(*citing Wales,* 612 F. Supp. at 521-22).

[26] *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2nd Cir. 1985).

[27] *Hasbro*, 780 F.2d at 192 & n.2; *Merit Diamond Corp. v. Frederick Goldman, Inc.,* 376 F. Supp. 2d 517, 523 (S.D.N.Y. 2005).

To satisfy the second element, ISDA, as the copyright owner, must demonstrate "'(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'"[28] Actual copying may be established by either direct evidence of copying or circumstantial proof of copying, consisting of evidence that the alleged infringer had access to the protected work and "that there are similarities between the two works that are probative of copying."[29] The standard test for substantial similarity is whether an "'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'"[30]

That test is met here: Socratek is reproducing and distributing documents that are virtually complete knock-offs of ISDA's 1992 and 2002 copyrighted Master Agreements; and Socratek is pedaling the  documents as the ISDA copyrighted materials. But Section 106 of the Copyright Act grants ISDA, as the copyright holder, the "exclusive right" to reproduce and to distribute the copyrighted works.[31]

Accordingly, ISDA has established the elements of its claims of copyright infringement and satisfied the requirements for the issuance of a preliminary injunction.

---

[28] *Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 110 (2d Cir. 2001)(*quoting Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)).

[29] *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (internal quotations omitted).

[30] *Hamil*, 193 F.3d at 100 (*quoting Peter Pan Fabrics, Inc. v. Martin Weiner Corp*., 274 F.2d 487, 489 (2nd Cir. 1960) (L. Hand, J.)).

[31] 17 U.S.C. §106(1), (3).

*C. Balancing of the Hardships.*

Even if the Court were to have any remaining concerns about ISDA's likelihood of succeeding on the merits, ISDA certainly has satisfied the alternative test of identifying sufficiently serious questions going to the merits to make them a fair ground for litigation.[32] Under that standard, ISDA also must show that a balancing of the hardships tips decidedly in its favor in order to be entitled to a preliminary injunction.  The proof submitted in support of this motion satisfies that additional criterion.

ISDA spent capital and also invested staff resources developing the Master Agreements. These are creative materials that are intended to facilitate derivatives transactions. They are relied upon by banks, financial institutions, and traders, and are important to the services that ISDA offers its members and others who wish to use its contracts. The loss to ISDA that would result from Socratek's use by of infringing Master Agreements would be significant. Without a preliminary injunction, Socratek would be able to misappropriate ISDA's copyrighted creative materials to reach the same target consumers – who in turn can reproduce ISDA's work instantaneously and on a worldwide basis.

On the other hand, we are dealing here with a knowing infringer, one that was given advance warning of a potential copyright lawsuit, and cannot be "permitted to construct its business around its infringement."[33] Socratek "deliberately sailed in harm's way" by continuing to reproduce and sell its infringing Master Agreement after receiving ISDA's

---

[32] *Wales Industrial,* 612 F. Supp. at 521.

[33]  *Apple Computer, Inc. v. Franklin Computing Corporation*, 714 F.2d 1240, 1255 (3rd Cir. 1983).

cease-and-desist letter.[34] Moreover, by its admission on its website, Socratek literally has about 498,800 other agreements in its database that it can market. It would not suffer substantial financial losses if it is enjoined from reproducing ISDA's copyrighted product.

Moreover, Socratek's harm if a preliminary injunction is erroneously issued (the loss of sales revenue) is more readily recompensed monetarily than ISDA's harm if a preliminary injunction is erroneously denied.  Among other things, Socratek is disseminating interactive copies of the Master Agreements - which as we have explained, can be reproduced by third parties on an enormous scale.[35] And, as noted, Socratek's harm is largely the result of its own actions. All factors considered, "given the verbatim copying, lack of creative ingenuity, and profit-driven purpose" of the Socratek knock-offs, this case is one in which the creative and expressive goals of copyright law would be served better by granting a preliminary injunction.[36]

---

[34] *Columbus Rose Ltd. v. New Millennium Press,* 2002 U.S. Dist. LEXIS 9130, *29 (S.D.N.Y. May 20, 2002)(*citing Cherry River Music Co.*, 38 F. Supp. 2d at 323-24 (*citing Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 754 (2d Cir. 1996)(continued sales after cease and desist letter and confirmation of existence of plaintiff's trademark found to be evidence of bad faith))).

[35] *Capitol Records, LLC v. McEwan,* 2009 U.S. Dist. LEXIS 2073, at *7 ("fact that Plaintiffs' recordings can be replicated into infinity, for free, establishes that a distinct hardship rests with Plaintiffs.").

[36] *FMC Corp. v. Control Solutions, Inc*., 369 F. Supp. 2d 539, 576 (E.D. Pa. 2005)(citation omitted).

*D. Socratek's Defenses.*

Socratek insists that it has the right to reproduce ISDA's copyrighted works under Section 35A of the Securities Act of 1934, which provides for a public right of access to the "EDGAR" database.[37] This reading is unsupportable.

"In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."[38] The law has long recognized that the mere appearance of copyrighted documents in a public file does not *ipso facto* place the author's intellectual property in the public domain.[39] Section 35A does not detract from this principle in the least.

Indeed Section 35A and the Copyright Act address different interests and the two statutes can be read "to give effect to each … while preserving their sense and purpose."[40]

---

[37] 15 U.S.C. § 78*ll.*

[38]  *K Mart Corp. v. Cartier, Inc*., 486 U.S. 281, 291 (1988); *County of Nassau,* 524 F.3d at 414.

[39]  *See, e.g., Practice Management Info.Corp. v. American Med. Ass'n,* 121 F.3d 516, 518-19 (9th Cir. 1997) (use by Health Care Financing Administration of copyrighted medical procedure code in Medicaid reimbursement regulations did not render copyright invalid); *CCC Information Servs., Inc. v. MacLean Hunter Mkt. Reports, Inc.,* 44 F.3d 61, 73-74 (2nd Cir. 1994) (copyrighted compendium of used car valuations did not fall into public domain merely because the information was incorporated into insurance laws of several states)(*citing* Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 5.06(c) at 5-60 (1994)); *Religious Tech. Ctr. v. Lerma,* 40 U.S.P.Q.2D (BNA) 1569, 1996 U.S.Dist. LEXIS 15454, *14 (E.D.Va. Oct. 4, 1996)(posting of "unpublished" documents that were found in court file not fair use). *Cf., Marshall & Swift v. BS & A Software,* 871 F. Supp. 952 (W.D. Mich. 1994)(defendant's copying and commercial sale of copyrighted manual used by appraisers and tax authorities found an infringement).

[40]  See *Watt v. Alaska,* 451 U.S. 259, 267 (1981); *Data Gen. Corp. v. Grumman Sys. Support Corp*., 36 F.3d 1147, 1188 (1st Cir. 1994)(harmonizing Copyright Act and Sherman Act).

Section 35A does not refer to abrogating anyone's copyright interests.[41] While Section 35A contains the word "disseminate," that is not a term that at the time the law was enacted in 1987 was commonly understood as meaning "copy" or "reproduce."[42] Nothing in the legislative history demonstrates that Congress intended to authorize the for-profit reproduction for commercial resale by third parties of copyrighted documents that are fortuitously deposited into EDGAR.[43]

The two statutes also serve different interests. One, the Copyright Act, is intended "to promote the advancement of knowledge and learning by giving authors economic incentives (in the form of exclusive rights to their creations) to labor on creative, knowledge-enriching works."[44] The other, Section 35A, prohibits the contractor

---

[41] In pertinent part, Section 35A (15 U.S.C. § 78*ll*) provides:

> The Commission, by rule or regulation—
>
> (1) shall provide that any information in the EDGAR system that is required to be disseminated by the contractor--
> > (A) may be sold or disseminated by the contractor only pursuant to a uniform schedule of fees prescribed by the Commission;
> > (B) may be obtained by a purchaser by direct interconnection with the EDGAR system;
> > (C) shall be equally available on equal terms to all persons; and
> > (D) may be used, resold, or redisseminated by any person who has lawfully obtained such information without restriction and without payment of additional fees or royalties.

[42] *See, e.g., People v. Witzerman,* 29 Cal. App. 3d 169, 180, 105 Cal. Rptr. 284 (1972) ("The word 'disseminate' means to scatter, spread widely, broadcast or disperse')(*citing The Random House Dict. of the English Language* 415 (unabridged ed. 1966)); *Webster's New World Dictionary of the American Language* 408 (D. Guralnik ed. 1980)(to scatter or sow far and wide); *The New American-Roget's* Thesaurus 144 (P. Morehead ed. 1978)(to distribute or disperse); *Thorndike-Barnhart Comprehensive Desk* Dictionary 243 (C. Barnhart ed. 1955)(to scatter); *The Living Webster Encyclopedic Dictionary of the English Language* 289 (English Language Inst. Ed. 1971)(disseminate defined to mean to scatter widely or disperse);

[43] *See* S. Rep. No. 100-105, "Securities and Exchange Commission Authorization Act of 1987," P.L. 100-181, *reprinted at* 1987 U.S.C.C.A.N. 2089, 2096-97. *See also* 133 *Cong. Rec.* S19455-19460 (July 10, 1987)(Senate bill); 133 *Cong. Rec.* H23692-23697 (Sept. 10, 1987)(House bill); 133 *Cong. Rec.* S33034-35 (Oct. 30, 1987)(conference report); 133 *Cong. Rec.* H33006-13 (Nov. 20, 1987)(*id.*).

[44] *CCC Information Servs.,* 44 F.3d at 65.

administering EDGAR from extracting monopolistic prices. And it gives interested

persons a right to retrieve from EDGAR a copy of a document filed with the SEC and to

sell, transfer or re-disseminate that copy without payment of any additional royalty or fee

to the contractor. The purpose of this, as the Senate committee explained, was to

"improve the speed and effectiveness of SEC processing and supply more rapid and

timely dissemination of corporate and financial information to investors and the business

community" by making "information accessible to investors, the media and others in a

matter of minutes rather than days or weeks."[45]

In essence, what Section 35A does is allow someone to access EDGAR and retrieve a

document and, if so desired, to sell or transfer that document. What Section 35A does not

do is authorize the commercial reproduction for profit of copyrighted documents in

derogation of the protections afforded by the Copyright Act.

Just as a book seller legally can purchase a copyrighted book and resell that book to a

retail customer, but cannot legally photocopy the book and sell the photocopies as the

equivalent of the copyrighted work, Section 35 at most entitles a user such as Socratek to

resell a copyrighted document downloaded from EDGAR once, but not to resell it

numerous times to multiple customers as downloaded and manipulable files.

Another example drives the proverbial nail into the coffin of Socratek's claims.

Statutes should be read in a way that makes sense rather than create absurd results.[46]

Under Socratek's extravagant interpretation of Section 35A's "used, sold or

redisseminated" language, suppose an entity filed with the SEC the words and score to

---

[45] S. Rep. No. 100-105, *reprinted at* 1987 U.S.C.C.A.N. at 2096-97.

[46] *United States v. Dauray,* 215 F.3d 257, 264 (2nd Cir. 2000) ("A statute should be interpreted in a way that avoids absurd results.").

the well-known copyrighted tune "When You Wish Upon A Star"[47] as a license

agreement attached to a 10-K. In Socratek's view, a purveyor of sheet music could freely

download that from EDGAR and then reproduce and sell the words and score of that

song to multiple customers without the payment of any copyright royalties.  Plainly that

is not what Section 35A was intended to permit.

Finally, Section 35A and the SEC do not require that Master Agreements as a class

must be deposited into EDGAR, and the versions of the Master Agreements pirated by

Socratek were filed by third-parties, not ISDA.  Under Socratek's view of Section 35A,

ISDA and all other copyright holders of materials deposited into EDGAR would be at

risk of losing their copyright protections through the acts of third parties over whom

ISDA or the copyright holder has no control.  Congress certainly could not have intended

such a capricious destruction of intellectual property rights.

In sum, nothing in Section 35A permits those accessing EDGAR to take a

copyrighted document, such as a Master Agreement, and to violate the copyright holder's

exclusive rights by storing the document in their files and reproducing that copy

repetitively without authorization and then distributing those copies to anyone willing to

pay the infringer's fee.

---

[47] *Bourne Co. v. Twentieth Century Fox Film Corp.,* 602 F. Supp. 2d 499, 501-02 (S.D.N.Y. 2009)(discussing history of song).

**Conclusion**

For the foregoing reasons, a preliminary injunction should issue, restraining and

enjoining Defendant Socratek, L.L.C. from infringing Plaintiff International Swaps and

Derivatives Association, Inc.'s copyrights in the 1992 and 2002 Master Agreements

pending the final determination of this suit and the issuance of a permanent injunction.

Respectfully submitted,
SHAINIS & PELTZMAN, CHARTERED

By:_S/_____
Stephen C. Leckar (SL-9168)
1850 M St., N.W., Suite 240
Washington, D.C. 20036
(202) 742-4242
Steve@s-plaw.com

LAW   OFFICE   OF   FREDERICK   R.
DETTMER

By:_S/_____
Frederick R. Dettmer (FD-2426)
340 Corlies Ave.
Pelham, New York 10803
(914) 738-8782
fdettmer@aol.com


Attorneys for Plaintiff INTERNATIONAL
SWAPS AND DERIVATIVES
ASSOCIATION, INC.