SHAINIS & PELTZMAN, CHARTERED
Stephen C. Leckar (SL-9168)
1850 M St., NW, Suite 240
Washington, D.C. 20036
(202) 742-4242

LAW OFFICE OF FREDERICK R. DETTMER
Frederick R. Dettmer (FD-2426)
340 Corlies Ave.
Pelham, New York 10803
(914) 738-8782
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**INTERNATIONAL SWAPS AND DERIVATIVES ASSOCIATION, INC.**

        **Plaintiff,**

-against-

**SOCRATEK, L.L.C.**

        **Defendant.**
------------------------------------

**Index No.:**
**1:09-cv-8033 (HB)**
**ECF Case**

**DECLARATION OF ROBERT PICKEL**
IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION

Robert Pickel declares under the penalties of perjury as follows:

*A. My background.*

1. I graduated from Williams College in 1980 and received my Juris Doctors degree from New York University in 1984. I was an assistant general counsel in the Legal Department of Amerada Hess Corporation, an international oil and gas company. I also worked at the law firm of Cravath, Swaine & Moore in New York and London, where I

represented the International Swaps and Derivatives Association, Inc. ("ISDA") in a variety of matters. I became ISDA's General Counsel in November 1997 and, in January, 2001 I became its Executive Director and Chief Executive Officer.

*B. ISDA's history and purpose.*

2. ISDA is a New York not-for-profit corporation, formerly known as the "International Swaps Dealers Association, Inc." It was chartered in 1985. Its headquarters are at 360 Madison Avenue - 16th Floor, New York, NY 10017. ISDA today has over 830 member institutions. These members include most of the world's major institutions that deal in privately negotiated derivatives, as well as many of the businesses, governmental entities and other end users that rely on over-the-counter derivatives to manage efficiently the financial market risks inherent in their core economic activities.[1]

3. Since its inception, ISDA has pioneered efforts to identify and reduce the sources of risk in the derivatives and risk management business. Among its most notable accomplishments are: developing the ISDA *Master Agreement*; publishing a wide range of related documentation materials and instruments covering a variety of transaction types; producing legal opinions on the enforceability of netting and collateral arrangements (available only to ISDA members); and advancing the understanding and treatment of derivatives and risk management from public policy and regulatory capital perspectives.

---

[1] A "derivative" is a risk transfer agreement, the value of which is derived from the value of an underlying asset. The underlying asset could be a physical commodity, an interest rate, a company's stock, a stock index, a currency, or virtually any other tradable instrument upon which two parties can agree. An "over-the-counter" (OTC) derivative is a bilateral, privately-negotiated agreement that transfers risk from one party to the other.

*C. The ISDA Master Agreements.*

4. ISDA owns the registered copyrights in, *inter alia,* the: (i) the 2002 ISDA Master Agreement; (ii) the 1992 ISDA Master Agreement (Multicurrency-Cross Border); and (iii) the 1992 ISDA Master Agreement (Single Currency – Local Jurisdiction).

5. The Master Agreements were created as "best practices" instruments that would be used (and are used in fact) for derivatives trading. They also are used by ISDA and other firms for training and instructional purposes. They are available through ISDA in "hard" copy or in electronic format. The advantage to market participants of using the ISDA documentation architecture is to reduce the time and expense involved in reviewing documentation prepared by another party.

6. ISDA generates on an annualized basis in excess of $35,000 in direct sales of the 1992 and 2002 Master Agreements. In addition, members, firms and others pay annual fees to subscribe to ISDA's on-line library, which contains copies of the Master Agreements.

*D. ISDA has not authorized Socratek to reproduce or distribute Master Agreements.*

7. ISDA has not authorized or licensed Socratek, LLC, (or TechAgreements) to copy or distribute any copies of the Master Agreement.

*E. A comparison between what Socratek sells and the ISDA original.*

8. ISDA Master Agreements are comprised of two parts: the "Main Text," or basic contract, which contains provisions that govern the legal and credit relationship of the parties, and an accompanying "Schedule," which is used by the parties to choose whether and how certain of the Master Agreement's optional provisions will apply and to make bilaterally negotiated additions or deletions to the Main Text.

9. Notably, the ISDA-provided Schedule does not make or recommend any substantive changes or elections; all the Schedule provides is a template for making such changes or elections.

10. I understand that Breda Walsh ("Walsh") an employee in our New York office, accessed Socratek's website (http://www.techagreements.com) and ordered from Socratek and paid for a copy of the 1992 (Single Currency-Local Jurisdiction) Master Agreement and that she later ordered from Socratek and paid for a copy of the 2002 Master Agreement. See the Declaration of Breda Walsh, (the "Walsh Dec."), submitted in conjunction with plaintiff's motion for a preliminary injunction. I have compared the 2002 product that she received from Socratek (Exhibit 3b to the Walsh Dec.) with the ISDA original (Exhibit 4a to the Walsh Dec.).

11. In both instances, the language of the Main Text (unpaginated pages 1-27 of the Socratek reproduction) (Exhibit 3b to the Walsh Dec.) and pages 1-28 of the ISDA original (Exhibit 4a to the Walsh Dec.) are virtually identical. There are significant changes in the Schedule that appears in the Socratek version, namely at unpaginated pages 29-38 of Exhibit 3b, that are not in the ISDA Schedule template, which appears at pages 29-36 of Exhibit 4b.[2] Plainly the contracting parties to the transaction that was memorialized in Exhibit 3a to the Walsh Dec. deemed the provisions reflected in that specific Schedule to be pertinent to their particular agreement. But ISDA did not (and has not) endorsed that additional language, which may or may not be appropriate for other firms. Yet the Socratek 2002 ISDA Master Agreement does not disclose that fact to

---

[2] For instance, these bilaterally negotiated amendments in the 2002 transaction that Ms. Walsh reported buying from Socratek (Exhibit 3b) included substantive amendments to the Master (*i.e.*, by filling in the template, by defining the term "Specified Indebtedness, and by deleting the majority of the Payee Representations in Section 2(b)) of the Schedule).

purchasers. Nor is there any disclosure to that effect at Socratek's website, which I have accessed and reviewed.

   *F. ISDA will be irreparably injured in the absence of an injunction.*

12. In the absence of a preliminary injunction, ISDA will be irreparably injured by Socratek's continued infringement of ISDA's copyrights. First, ISDA paid Socratek $35.00 for each of the copies that Ms. Walsh bought from it. ISDA charges non-members $150.00 for the 1992 Master Agreement and $60.00 for the 2002 Master Agreement. ISDA members may purchase these Master Agreements from ISDA at half the prices ISDA charges non-members. Hence Socratek will usurp from ISDA revenues that Socratek gains by unauthorized, cut-rate sales of the Master Agreements.

13. Moreover, when Socratek sends out to its customers interactive copies of the ISDA Master Agreement via the internet, Socratek's customers then obtain virtually identical copies of ISDA's copyrighted works. Those copies, in turn, can be quickly, easily and inexpensively reproduced and distributed almost limitlessly by others. As a practical matter it would be impossible to stop such infringement.

14. In addition, as discussed above, the unauthorized Socratek product will lead to confusion in the market and potentially impact ISDA's business reputation. What Socratek markets are highly customized instruments, each used for a specific bilateral contractual relationship. These Master Agreements copy the Main Text but then include Schedules that contain provisions which differ from the original ISDA Schedules, which again are templates. The Socratek-supplied Schedules may add or detract in significant ways from ISDA's copyrighted standard. Yet Socratek sells these Master Agreements without any disclosure or explanation that ISDA has not reviewed the Schedules used by

those parties. Purchasers are at risk of believing that the "negotiated" terms contained in the Socratek-furnished Schedule are ISDA's, and by extension, market-endorsed terms.

I have read the foregoing and declare under penalty of perjury that it is true, to the best of my knowledge.

Executed this 15th day of September, 2009.

_____
Robert Pickel

## Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing Declaration of Robert Pickel in Support of Plaintiff's Motion for a Preliminary Injunction was served, by electronic means, upon the following the 22nd day of September, 2009:

>Alan R. Schwartz, Esq.
>30 Hancock Street
>Lexington, Massachusetts 02420

_____
FREDERICK R. DETTMER