UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
INTERNATIONAL SWAPS AND                          :
DERIVATIVES ASSOCIATION, INC.                    :
                                                 :
               Plaintiff,                      :
                                                 :     09 CV 8033 (HB)
       - against -                             :
                                                 :     OPINION &
SOCRATEK, L.L.C.,                                :     ORDER
                                                 :
               Defendant.                      :
                                                 :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

       Plaintiff International Swaps and Derivatives Association, Inc. ("Plaintiff" or "ISDA") created a copyrighted form agreement to be used by individuals or businesses that enter into derivatives transactions. The completed documents are often submitted to the SEC for public filing and made available on "EDGAR," a statutorily-created, but privately-run website designed by Congress to provide greater public access to SEC filings. Defendant Socratek, L.L.C. ("Defendant" or "Socratek") runs a website that collects these agreement documents from the EDGAR website and resells them to various interested parties. Plaintiff claims that the resale of these completed form agreements infringes on its reproduction and distribution rights under the Copyright Act, 17 U.S.C. § 106 (2010). Plaintiff moves for a preliminary injunction that would bar Defendant from selling these agreements through the pendency of this action, and Defendant moves to dismiss the complaint for failure to state a claim. For the reasons that follow, Plaintiff's preliminary injunction is DENIED and Defendant's motion to dismiss is DENIED.

                              **I.    FACTUAL BACKGROUND**

     ISDA is a trade association whose members deal in privately negotiated derivatives. Derivatives are highly complex securities that get their name from the fact that they "derive" value from other underlying instruments or indexes. *See CSX Corp. v. Children's Inv. Fund Management, LLP*, 562 F.Supp.2d 511, 519 (S.D.N.Y. 2008) (describing derivatives). ISDA sells blank contract forms called "Master Agreements," which parties can use when they want to enter into a negotiated derivatives transaction. ISDA holds a copyright in various iterations of these form agreements, and claims to generate over $35,000 annually in direct sales of these documents, along with annual fees

1

paid by ISDA members who may obtain copies from the ISDA's own on-line library.  Parties who enter these agreements will at times file the completed contracts with the SEC as part of their public filing requirements.  These agreements, like many public filings and attached exhibits, are made available by the SEC to the public on a website called the Electronic Data Gathering, Analysis, and Retrieval system, or "EDGAR."  *See* Next-Generation EDGAR System, http://www.sec.gov/edgar/searchedgar/webusers.htm (last visited Apr. 29, 2010).  EDGAR was established by Section 35A of the Securities and Exchange Act of 1934 (the "Exchange Act").  *See* 15 U.S.C. §78*ll*.  The website is run by a private contractor, but its operation is governed by the Exchange Act and SEC regulations.  *Id.*  Generally speaking, any member of the public can access, review, and download these documents.  Documents that are filed with the SEC and available on EDGAR can be obtained either directly through the EDGAR website, or through a third-party website like Westlaw or Lexis that provides its own access to the EDGAR materials.

       Socratek is a limited liability corporation that runs TechAgreement.com, a website that provides "reference agreements and deal intelligence for business professionals and lawyers."  TechAgreements.com, http://www.techagreements.com/default.aspx (last visited Apr. 13, 2010).  Socratek admits that it obtained copies of completed derivatives agreements that utilized the ISDA form, and sold them via the TechAgreement website for a profit.  Plaintiff likewise confirmed that Socratek sold ISDA-based agreements by having an ISDA employee purchase copies herself.  The documents include the ISDA copyright mark and year of copyright.

## II.  DISCUSSION

       Plaintiff alleges that Defendant infringed its rights of reproduction and distribution by reproducing and reselling the completed agreements, and seeks a preliminary injunction to stop Defendant's allegedly infringing activity.  Defendant responds that it is not a copyright infringer because the Exchange Act expressly provides for the copying and resale of these publicly filed documents and also implies that they are not "substantially similar" because the copyright is of the form agreement while Socratek reproduces and distributes completed agreements.  Based on the allegedly express abrogation of copyright allowed by the Exchange Act for documents on EDGAR, Defendant moves to dismiss for failure to state a claim.  Since Defendant's motion turns on the merits of this dispute, while Plaintiff's motion for preliminary injunction must by definition also include equitable elements, I will analyze Defendant's motion first.

    **A.  Legal Standard**

A complaint will be dismissed under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P.12(b)(6). To survive a motion to dismiss on this ground, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Where the court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 1950. A court must accept as true all of the factual allegations in the plaintiff's complaint, *see, e.g., Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009), and may consider "undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint," *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008) (internal citations and quotations omitted).

B. **Defendant's Motion to Dismiss**

Socratek straightforwardly argues that the statutory language that implements the EDGAR website and filing system expressly allows it to reproduce and sell any filed document, and therefore preempts any potential copyright liability related to this behavior. Unfortunately, the statute is not so clear, and without more will not support dismissal. Defendant relies on language in the Exchange Act that says information on EDGAR "may be used, resold, or redisseminated by any person who has lawfully obtained such information without restriction and without payment of additional fees or royalties." 15 U.S.C. § 78*ll*(1)(D). While this supports Defendant's position, viewed in context it does not alone show that Socratek is absolved of any potential copyright liability for reselling the ISDA agreements. The language is in a section that describes how the private contractor that operates the EDGAR website should disseminate the filings. In addition to the "resold, or redisseminated" language, the statute also requires that it be distributed "pursuant to a uniform schedule of fees prescribed by the [SEC]," obtained by "direct interconnection" with the system, and "shall be equally available on equal terms to all persons." § 78*ll*(1)(A) – (C). Taken as a whole, the language Defendant relies upon appears to mean that he may use or resell the information "without payment of additional fees or royalties" to the private contractor. How this may affect the copyright on a filed document, or whether it does so at all, is at best unclear. The legislative history does not provide Defendant much comfort either, as the Senate Report only mentions that the purpose of EDGAR is to "automate the filing, processing and dissemination" of SEC filings, and says nothing about any copyright implications of the program. S.Rep. No. 100-105, at 9 (1987).

3

Somewhat surprisingly, the copyright implications of documents filed with the SEC and available on EDGAR appear to be a matter of first impression. Neither party provided, and this Court could not find, any federal or state case law on the reproduction or distribution of copyrighted materials found on EDGAR or otherwise obtained from the SEC. There is likewise scant case law that more generally analyzes conflicts between the Copyright Act and a federal statute. Defendant points to *Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21 (2000) to support its contention that a federal statute can impliedly preempt the Copyright Act. In *Smithkline*, the Second Circuit determined that a statute which required generic drug manufacturers to utilize nearly identical warning labels as the brand-name manufacturer trumped copyright law. 211 F.3d at 29. There, however, the Second Circuit was faced with a federal statute that *required* generic drug manufacturers to copy labeling language before it could receive authorization to sell the generic version of the drugs. *Id.* at 24. In addition, the statute in question was "a partial amendment to the patent laws," *id.* at 28 n.4, and consequently suggested some relationship to intellectual property concerns. By comparison, the statute here does not require the use of any particular document or language by others, but rather permits the usage, and otherwise has no clear connection to copyright or other intellectual property laws. *Smithkline* presented a fairly unique situation where a drug manufacturer's decision to copyright its labeling language acted as an impediment to the manufacture of the FDA approved generic drug. There the Circuit determined that it was more appropriate to read the statute as a limited abrogation of copyright law rather than consider affirmative defenses such as fair use or implied license. *Id.* at 25. No such direct conflict or unusual circumstances exist here.[1]

Indeed, as *Smithkline* suggests and other case law indicate, a copyright claim is usually actionable even where a statute authorizes certain behavior that may conflict with a party's rights in the copyrighted materials. The closest analogue to the issue at bar is where a state law allowed members of the public to copy and distribute copyrighted test questions used on state exams. In *College Entrance Examination Bd. v. Pataki*, 889 F.Supp. 554 (N.D.N.Y. 1995), New York's Standardized Testing Act ("STA") required testing organizations to submit copyrighted test materials to the state, disclose copies to test subjects, and deemed the materials "public records." *Id.* at 558-560. Faced with a preliminary injunction request by a testing organization, the court determined that the Copyright Act

---

[1] In the only other somewhat relevant case this Court could find on conflicts between the Copyright Act and other federal statutes, the 8th Circuit determined that the Federal Communications Act was not "inconsistent with federal policy underlying the Copyright Act." *See Black Hills Video Corp. v. FCC*, 399 F.2d 65 (1968). That case considered the implications of an FCC rule that forbid duplication of certain programs on the same day they are presented by a local station, and therefore potentially precluded the exercise of a party's right to reproduction. *Id.* at 70. In addition to being inapposite to the facts in this case, the legal analysis was minimal and provided no further support for either party. *Id.*

preempted the STA, and that the government would have to provide some affirmative defense to the infringement claim in order to defeat the injunction. *Id.* at 563-64.

Although most cases involve conflicts between state law and the Copyright Act, Defendant provided no case law to indicate a different result between a conflicting federal law and the Copyright Act. Indeed, even in *Smithkline* the parties and Circuit both initially considered affirmative defenses to the infringement claim, and only found an implied preemption of copyright law because they were in direct conflict. *See* 211 F.3d at 25, 28.[2] In this case, although the provision for further copying and distribution may be in some conflict with the Copyright Act, there is little indication at this time that it was intended to preempt the rights it grants to copyright holders. Since Defendant has neither shown that the Exchange Act language preempts the Copyright Act, nor sufficiently raised any affirmative defense to Plaintiff's claim, the motion to dismiss for failure to state a claim must be dismissed.

### C. Plaintiff's Motion for Preliminary Injunction

To obtain a preliminary injunction, a party must demonstrate (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *See Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002) (internal quotations and citations omitted). "[G]enerally when a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed." *Id.* (quoting *ABKCO Music, Inc. v. Stellar Records, Inc.,* 96 F.3d 60, 64 (2d Cir. 1996)).

To make out a prima facie case of copyright infringement, a party must show (1) ownership of a valid copyright in the item and (2) unauthorized copying. *See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003). Unauthorized copying is demonstrated by (1) actual copying of the item and (2) that the copy was "substantially similar" to the original copyrighted work. *Id; see also Pem-America, Inc. v. Sunham Home Fashions, LLC*, 83 Fed. Appx. 369, 371 (2d Cir. 2003). There is no dispute here that Defendant copied a completed version of ISDA's form agreement, but Defendant argues that because it was a completed rather than blank form, it is not "substantially similar." Substantial similarity normally only requires that "the ordinary

---

[2] Similarly, the Office of Legal Counsel for the Department of Justice determined that "the federal government can be liable for violation of the copyright laws" and noted that "there is no 'per se' rule under which such government reproduction of copyrighted material invariably qualifies as fair use." WHETHER AND UNDER WHAT CIRCUMSTANCES GOVERNMENT REPRODUCTION OF COPYRIGHTED MATERIALS IS A NONINFRINGING 'FAIR USE' UNDER SECTION 107 OF THE COPYRIGHT ACT OF 1976, Off. Legal Counsel, 1999 WL 33490240 at *2-4 (Apr. 30, 1999).

observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Boisson v. Banian, Ltd*, 273 F.3d 262, 272 (2d Cir. 2001); s*ee also Tufenkian,* 338 F.3d at 134-35 ("[a] court, confronted with an allegedly infringing work, must analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking."). Defendant notes that it does not sell an exact copy of the form, but rather a copy of a completed agreement that used the copyrighted form. The Circuit "requires a more refined analysis when a plaintiff's work is not 'wholly original' but rather incorporates elements from the public domain." *Crown Awards, Inc., v. Trophy Depot*, No. 2:03 Civ. 02448, 2003 WL 22208409, at *3 (E.D.N.Y. Sept. 3, 2003) (citing *Key Publ'ns, Inc. v. Chinatown Today Publ'g. Enterps, Inc.*, 945 F.2d 509, 514 (2d Cir. 1991)). In those instances, the analysis is of "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation." *Key Publ'ns,* 945 F.2d at 514; *see also Boisson*, 273 F.3d at 272. In either case, the substantial similarity test has been met for purposes of initial pleading: Socratek reproduced and distributed completed agreements which contained most of the identical elements of the copyrighted form. According to Plaintiff, and not refuted by Defendant, 29 of 36 pages of the copyrighted form were reproduced and resold to their employee when she purchased a copy for this lawsuit. Plaintiff has sufficiently alleged "substantially similar" copying by Defendant, and has therefore made out a prima facie case of copyright infringement.

  However, though a prima facie case of infringement normally creates a presumption of irreparable harm, that presumption may be rebutted. "The presumption of irreparable harm that arises with a prima facie case of copyright infringement falls when opposing evidence is offered," and may be rebutted "if the plaintiff's damages appear to be trivial." *Clonus Assocs. v. Dreamworks, LLC*, 417 F. Supp. 2d 248, 251 (S.D.N.Y. 2005) (quoting *Marisa Christina, Inc. v. Bernard Chaus, Inc.*, 808 F. Supp. 356, 359 (S.D.N.Y. 1992); *Blazon, Inc. v. DeLuxe Game Corp.*, 268 F. Supp. 416, 420 (S.D.N.Y. 1965)); *see also UTStarcom, Inc. v. Starent Networks, Corp.*, 675 F. Supp. 2d 854, 864 (N.D.Ill. 2009) ("A defendant can rebut this presumption by demonstrating that the plaintiff will not suffer any harm if the injunction is granted."). In this case, there is very little indication that Plaintiff will suffer irreparable harm absent an injunction. The presumption for harm attaches in a copyright action because "the confusion created in the marketplace will often damage the copyright holder in incalculable and incurable ways." *Clonus Assocs.*, 417 F. Supp. 2d at 251 (citing *Bourne Co. v. Tower Records*, 976 F.2d 99, 101 (2d Cir. 1992)). That concern is minimal here, as these forms have been in

SEC public filings for years and this is the first indication of anxiety about their distribution and reproduction.  The agreements are widely available to any member of the public that wishes to access them from EDGAR or even other third-party websites like Lexis or Westlaw.  Though it does not excuse Defendant's conduct should ISDA ultimately succeed on the merits of its suit, it is hard to see how Socratek's sale of the same agreements that a person could acquire from EDGAR or Lexis would create any unique and irreparable confusion in the marketplace or any further damage to ISDA's copyright.  ISDA is fairly concerned about the losses they may face if individuals use these completed agreements as model documents instead of purchasing their blank form agreements, but this injury can be sufficiently compensated with monetary relief.  Even in a copyright action, "irreparable harm means injury for which a monetary award cannot be adequate compensation" and must not be "remote or speculative but … actual and imminent." *Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 57, 68 (S.D.N.Y. 1981).  ISDA must show that an irreparable injury is not just possible, but likely, *see Clonus*, 417 F. Supp. 2d at 250, and in this case they have not done so.

     Even if Plaintiff could make a proper showing of irreparable harm, it did not make a sufficient showing of a likelihood of success.  ISDA has made out its prima facie case, but that is all they have done.  As noted above, this factual setting appears to be one of first impression, and the fact that the Exchange Act and EDGAR provides for the unfettered copying of documents filed with the SEC suggests that whether Socratek is liable for infringement is hardly an "open-and-shut case."  "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Vanlines.com LLC v. Net-Marketing Group Inc.*, 486 F. Supp. 2d 292, 295 (S.D.N.Y. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original).  The affirmative defenses that may exist based on government authorization to acquire and copy these documents, such as fair use or implied license, have yet to be explored at any length by the parties.  Indeed, Plaintiff itself suggest that *some* form of copying and sales is not entirely problematic: "Socratek is free to access EDGAR every time a customer orders a given transactional document utilizing an ISDA Master Agreement, to retrieve that particular document, and then to sell it to the customer." Pl.'s Reply Memorandum of Law, at 9.  While I need not decide any of these issues at this time, they highlight just a few reasons why it is far from clear on the current record that ISDA will likely succeed in this action.  Finally, the statutory conflict and unique circumstances do raise a "sufficiently serious question," but the balance of hardships is at best equal.  *See Vanlines.com*, 486 F. Supp. 2d at 296-97.  ISDA may lose profits from the sale of the form agreements if Defendant is able to continue selling the completed forms on its website, or Socratek will lose sales if the injunction issues.  Neither party provides much further evidence of any harm

beyond what a typical litigant faces in a civil suit of this nature. ISDA has failed to show the necessary elements needed to justify a preliminary injunction.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED and Plaintiff's motion for a preliminary injunction is DENIED.

The Clerk of the Court is instructed close the relevant motions (Docket Nos. 5 and 9) and remove them from my docket.

**SO ORDERED**
**May 4, 2010**
**New York, New York**

*[signature]*

**Hon. Harold Baer, Jr.**
**U.S.D.J.**